UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SCHOOL DISTRICT OF JANESVILLE
527 S. FRANKLIN STREET
JANESVILLE, WI 53548,

   Plaintiff,

                Case No:  21-cv-291

 v.

EB EMPLOYEE SOLUTIONS, LLC D/B/A THE DIFFERENCE CARD,
A DELAWARE LIMITED LIABILITY COMPANY,
C/O CT CORPORATION SYSTEM, REGISTERED AGENT
113 SEABOARD LANE, SUITE 170B
FRANKLIN, TN 37067,

ARCH INSURANCE COMPANY, A MISSOURI CORPORATION
C/O CORPORATION SERVICE COMPANY
2345 GRAND BOULEVARD, SUITE 900
KANSAS CITY, MO 64108,

   Defendants.

## COMPLAINT

NOW COMES the Plaintiff, School District of Janesville, by and through its attorneys, Strang, Patteson, Renning, Lewis & Lacy, s.c., and as and for its Complaint against the Defendants, alleges and shows the Court as follows:

## PARTIES

1. The Plaintiff, School District of Janesville ("District"), is classified as a unified school district under Wisconsin law. The District's office is located at 527 S. Franklin Street, Janesville, WI 53548.

2. The Defendant, EB Employee Solutions, LLC d/b/a The Difference Card ("Difference Card"), is a Delaware limited liability company. Upon information and belief, its

principal office is located at 113 Seaboard Lane, Suite 170B, Franklin, TN 37067. Its registered agent for service of process is CT Corporation System, located at 301 S. Bedford St., Suite 1, Madison, WI 53703. Upon information and belief, Difference Card is a single member LLC. Its sole member is EBS, Inc., a Delaware corporation with a principal address of 113 Seaboard Lane, Suite 170B, Franklin, TN 37067.

3. The Defendant, Arch Insurance Company ("Arch"), is a Missouri corporation. Upon information and belief, its principal office is located at 2345 Grand Boulevard, Suite 900, Kansas City, MO 64108. Its registered agent for service of process is Corporation Service Company, located at 8040 Excelsior Drive, Madison, WI 53717.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. This Court has personal jurisdiction over Defendants pursuant to Wis. Stat. § 801.05(1)(d), (5), and (10), and its exercise of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

## FACTUAL ALLEGATIONS

6. On or about July 1, 2018, the District entered into an Account Services Agreement with Difference Card as part of a Health Reimbursement Account (HRA) strategy (Exhibit A).

7. Difference Card administered the HRA. In addition, Difference Card offered the District a guaranteed maximum claim exposure, which Difference Card secured by purchasing an insurance policy from Arch. Difference Card represented to the District that it "provides flexibility to customize employee benefits and limit claim exposure through a proprietary insurance policy underwritten by Arch."

8. The HRA was designed to pay covered medical expenses of up to $4,750.00 for each single employee after the employee paid a $250.00 deductible and up to $9,500.00 for each employee with family coverage after the employee paid a $500.00 deductible.

9. The District funded the HRA, but with reinsurance, the District's maximum claim exposure was $94.71 per month per employee.

10. The District implemented the HRA strategy in order to maintain then-current health insurance benefits for its employees (with no increase in cost to its employees) and also to have a guaranteed maximum claim exposure.

11. Difference Card represented that its product provided the District with coverage for claims incurred during the plan year and submitted for reimbursement within three (3) months of the end of the plan year. It stated: "[a]ll claims must be submitted within 3 months of the end of the plan year." (Emphasis in original) (Exhibit B).

12. Difference card also represented that "Arch is a 10 million dollar reinsurance company…We purchase insurance from Arch.  They insure us.  You'll get an actual policy in the District's name laying this all out.  We take care of all of that. We handle all of that."

13. Difference Card represented that the District would pay a maximum of $141.68 per month per employee. This included a fixed fee of $46.97 per month per employee for Difference Card's administrative fee and the cost of reinsurance. After that, up to $94.71 per month per employee (the attachment point) went towards paying covered claims (Exhibit C). Specifically, Difference Card represented that "[o]ur fee covers the reinsurance policy plus all of our administrative costs, and an attachment point."

14. Difference Card also represented that it was providing a guaranteed savings of $1.5 million to the District and that the District would have extra funds available in its account as a result of the HRA strategy.

15. On or about March 27, 2018, Difference Card sent correspondence to the District stating: "We look forward to a long-term relationship with the School District of Janesville. In order to finalize the implementation process for 'The Difference Card' for a July 1, 2018 effective date, we will require a binder check in the amount of $52,966.96." Difference Card charged the District $7,500.00 for an "Initial Set up fee" and $45,466.96 for the "1st Month's Premium (968 employees x $46.97)."

16. Difference Card purchased a "Wisconsin Blanket Accident Policy" from Arch, as modified by a "Reimbursement Benefit Endorsement" (Policy No. 11REB0984700) (Exhibit D) (hereinafter, "Stop Loss Policy"). Difference Card and Arch listed the Policyholder as the "School District of Janesville." The Stop Loss Policy contained an effective date of July 1, 2018, and listed a policy term of "12 months." Difference Card and Arch listed the "Program Administrator" under the Stop Loss Policy as "EB Employee Solutions LLC Program."

17. The District also entered into 3-year contracts with Dean Health Plan and Mercyhealth under which Dean Health Plan and Mercyhealth agreed to cover medical expenses incurred by plan participants after an employee with single coverage reached $5,000.00 and an employee with family coverage reached $10,000.00.

18. Each month, Difference Card sent the District an invoice for $46.97 for each employee participating in the Dean Health Plan and Mercyhealth Plan, except for those employees who chose a point-of-service option.

19. In addition, on a weekly basis, Difference Card sent the District a check register showing the dates and amounts of checks to be issued from the HRA to pay providers for covered claims. The District then transferred funds to the HRA equal to the amounts listed.

20. Upon information and belief, Dean Health Plan and Mercyhealth sent weekly reports directly to Difference Card for all claims incurred by plan participants for medical expenses during the plan year.

21. On or about June 12, 2019, the District entered into an Amendment of the Account Services Agreement with Difference Card. (Exhibit E). As part of the Amendment, the District paid Difference Card an additional fee of $45,326.05 for "Run-Out Services" for the period of July 1, 2019 to September 30, 2019.

22. In mid-August of 2019, the District contacted Difference Card and Arch to determine when they would be reimbursing the District for the medical expenses that the District funded through the HRA in excess of the District's maximum claim exposure. Difference Card initially stated that it submitted the "claim" to Arch on July 1, 2019, such that the District would be reimbursed by the end of August. Later, Difference Card stated that it submitted the "claim" to Arch on July 29, 2019.

23. The Stop Loss Policy provided that "[b]enefits for loss covered by this Policy, other than benefits that require periodic payment, will be paid not more than sixty (60) days after the Company receives proper written proof of such loss."

24. After the sixty (60) day deadline referenced in Paragraph 23, above, had passed, and on or about October 18, 2019, Arch issued a check to the District for $949,748.58, representing only a partial reimbursement for medical expenses paid by the District.

25. Difference Card and Arch miscalculated this amount based upon their erroneous interpretation of the "Reimbursement Benefit" under the Stop Loss Policy.

26. The District subsequently demanded that Difference Card and Arch perform the correct calculation and reimburse the District for all amounts owed under the Stop Loss Policy.

27. On or about October 31, 2019, Arch issued another check to the District in the amount of $1,305,900.00, representing another late and partial reimbursement for medical expenses paid by the District in excess of its maximum claim exposure.

28. Difference Card and Arch still failed to reimburse the District for claims incurred by plan participants during the plan year that were submitted to Difference Card and Arch within three (3) months of the end of the plan year.

29. Difference Card and Arch denied any obligation to pay for claims incurred during the plan year that were submitted within three (3) months of the end of the plan year.

30. The District sent a demand letter on March 11, 2020, by and through its legal counsel, to Difference Card and Arch demanding reimbursement of all amounts owed to the District in excess of its maximum claim exposure.

31. Both Difference Card and Arch have failed to reimburse the District in full for claims incurred during the plan year that were submitted for reimbursement within three (3) months of the end of the plan year. Difference Card has also failed to reimburse the District for "Run-Out Services" that were never provided.

32. The actions of Difference Card and Arch are contrary to Wisconsin law. Under Wisconsin law, "[a]ny self-insurance plan under [Wis. Stat. § 120.13(2)(b)] that covers less than 1,000 public school district employees shall include excess or stop-loss reinsurance obtained

through an insurer authorized to do business in this state, *for the purpose of covering all eligible claims incurred during the term of the policy or contract*." (Emphasis added).

33. Although coverage may be provided on a paid basis, "[u]pon termination for any reason of an excess or stop-loss insurance policy that provides coverage on a paid basis, the policy shall apply all claims incurred but not paid prior to the termination of the policy to the aggregate deductible of the benefit period in which the service or item was provided or furnished to an employee or dependent under the self-insured employee health care benefit plan." Wis. Admin. Code INS § 8.11(5)(b).

34. The District has suffered damages in an amount to be determined at trial, including, but not limited to, all unreimbursed amounts for covered claims paid by the District, consequential and incidental damages, interest, attorney's fees, and punitive damages.

**FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT (DIFFERENCE CARD)**

35. The District hereby incorporates all preceding paragraphs as if fully set forth herein.

36. Difference Card materially breached its contracts with the District in numerous respects, including, but not limited to, failing to provide the program and coverage that it sold to the District, failing to properly perform its duties as the Program Administrator under the Stop Loss Policy, failing to timely reimburse the District for claims incurred and paid by the District, failing to provide the "Run-Out Services" that the District paid for and the parties agreed to, and acting contrary to Wisconsin law.

37. Difference Card also breached the duty of good faith and fair dealing in numerous respects, including, but not limited to, failing to provide the program and coverage that it sold to the District, failing to properly perform its duties as the Program Administrator under the Stop Loss Policy, failing to timely reimburse the District for claims incurred and paid by the District,

erroneously calculating the amounts owed to the District under the Stop Loss Policy, failing to provide "Run-Out Services," and acting contrary to Wisconsin law.

38. The District has suffered damages in an amount to be determined at trial, including, but not limited to, all unreimbursed amounts for covered claims paid by the District, consequential and incidental damages, interest, and attorney's fees.

### SECOND CLAIM FOR RELIEF – BREACH OF CONTRACT (AGAINST ARCH)

39. The District hereby incorporates all preceding paragraphs as if fully set forth herein.

40. Arch materially breached the Stop Loss Policy in numerous respects, including, but not limited to, failing to reimburse the District within the timeframe provided under the Stop Loss Policy, miscalculating amounts owed to the District under the Stop Loss Policy, denying coverage and reimbursement for claims incurred during the plan year that were submitted within three (3) months of the end of the plan year, failing to properly investigate the claims, and acting contrary to Wisconsin law.

41. Arch also breached the duty of good faith and fair dealing in numerous respects, including, but not limited to, failing to reimburse the District within the timeframe provided under the Stop Loss Policy, miscalculating amounts owed to the District under the Stop Loss Policy, denying coverage and reimbursement for claims incurred during the plan year that were submitted within three (3) months of the end of the plan year, failing to properly investigate the claims, and acting contrary to Wisconsin law.

42. The District has suffered damages in an amount to be determined at trial, including, but not limited to, all unreimbursed amounts for covered claims paid by the District, consequential and incidental damages, interest, and attorney's fees.

**THIRD CLAIM FOR RELIEF – FRAUDULENT MISREPRESENTATION UNDER WIS. STAT. § 100.18 (AGAINST DIFFERENCE CARD)**

43. The District hereby incorporates all preceding paragraphs as if fully set forth herein.

44. Difference Card made a representation to the District, a member of the public, that its product included coverage for claims incurred during the plan year and submitted for reimbursement within three (3) months of the end of the plan year.

45. Difference Card also made representations to the District, a member of the public, that Difference Card was providing a guaranteed maximum cost exposure to the District.

46. Difference Card's representations were untrue, deceptive, and misleading.

47. Difference Card made the representations with the intent to induce the District to purchase services and/or products from Difference Card.

48. Difference Card's representations materially induced a significant pecuniary loss to the District in an amount to be determined at trial, but no less than $428,238.62, plus interest, and attorney's fees.

**FOURTH CLAIM FOR RELIEF – INTENTIONAL MISREPRESENTATION (AGAINST DIFFERENCE CARD)**

49. The District hereby incorporates all preceding paragraphs as if fully set forth herein.

50. Difference Card made a representation to the District, a member of the public, that its product included coverage for claims incurred during the plan year and submitted for reimbursement within three (3) months of the end of the plan year.

51. Difference Card also made representations to the District that Difference Card was guarantying a maximum cost exposure to the District.

52. Difference Card also made representations to the District that it would provide "Run-Out Services" to the District for an additional fee of $45,326.05.

53. Difference Card's representations were untrue.

54. Difference Card made the representations knowing that they were untrue, or recklessly not caring with they were true or false.

55. Difference Card made the representations with the intent to deceive the District and to induce the District to purchase insurance coverage and other products and services to its pecuniary damage.

56. The District believed the representations were true and justifiably relied on them.

57. The District incurred substantial damages as a result of Difference Card's misrepresentations, in an amount to be determined at trial, but no less than $428,238.62, plus interest, and attorney's fees.

**FIFTH CLAIM FOR RELIEF – NEGLIGENT MISREPRESENTATION (AGAINST DIFFERENCE CARD)**

58. The District hereby incorporates all preceding paragraphs as if fully set forth herein.

59. Difference Card made a representation to the District, a member of the public, that its product included coverage for claims incurred during the plan year and submitted for reimbursement within three (3) months of the end of the plan year.

60. Difference Card also made representations to the District that Difference Card was guarantying a maximum cost exposure to the District.

61. Difference Card also made representations to the District that it would provide "Run-Out Services" to the District for an additional fee of $45,326.05.

62. Difference Card's representations were untrue.

63. Difference Card was negligent in making these representations.

64. The District believed the representations were true and justifiably relied on them.

65. Difference Card owed a duty of care to the District.

66. The District incurred substantial damages as a result of Difference Card's misrepresentations, in an amount to be determined at trial, but no less than $428,238.62, plus interest, and attorney's fees.

**SIXTH CLAIM FOR RELIEF – STRICT RESPONSIBILITY MISREPRESENTATION (AGAINST DIFFERENCE CARD)**

67. The District hereby incorporates all preceding paragraphs as if fully set forth herein.

68. Difference Card made a representation to the District, a member of the public, that its product included coverage for claims incurred during the plan year and submitted for reimbursement within three (3) months of the end of the plan year.

69. Difference Card also made representations to the District that Difference Card was guarantying a maximum cost exposure to the District.

70. Difference Card also made representations to the District that it would provide "Run-Out Services" to the District for an additional fee of $45,326.05.

71. Difference Card's representations were untrue.

72. Difference Card was so situated that it necessarily ought to have known the truth or untruth of the statements.

73. Difference Card had an economic interest in the transaction.

74. The District believed the representations were true and justifiably relied on them.

75. The District incurred substantial damages as a result of Difference Card's misrepresentations, in an amount to be determined at trial, but no less than $428,238.62, plus interest, and attorney's fees.

## SEVENTH CLAIM FOR RELIEF – DECLARATORY RELIEF UNDER WIS. STAT. § 806.04 (AGAINST DIFFERENCE CARD AND ARCH)

76. The District hereby incorporates all preceding paragraphs as if fully set forth herein.

77. Under Wis. Stat. § 806.04, the District seeks a declaration that it is entitled to coverage and reimbursement for the claims incurred during the plan year that were submitted within three (3) months of the end of the plan year.

78. A declaratory judgment is appropriate as there is a controversy in which a claim is asserted against parties with an interest in contesting it; the controversy is between adverse parties; the District has a legally protectible interest; and the issue in controversy is ripe for determination.

79. The District is further entitled to supplemental relief under Wis. Stat. § 806.04(8), including, but not limited to, the District's attorney's fees and costs incurred in establishing coverage.

## EIGHTH CLAIM FOR RELIEF – BAD FAITH (AGAINST DIFFERENCE CARD AND ARCH)

80. The District hereby incorporates all preceding paragraphs as if fully set forth herein.

81. Difference Card and Arch engaged in bad faith conduct towards the District including, but not limited to, failing to reimburse the District within the timeframe provided under the Stop Loss Policy, miscalculating amounts owed to the District under the Stop Loss Policy, denying coverage and reimbursement for claims incurred during the plan year that were submitted within three (3) months of the end of the plan year, failing to properly investigate the claims, and acting contrary to Wisconsin law.

82. There was no reasonable basis for Difference Card and Arch's actions and they knew or recklessly failed to ascertain that the claims should have been timely paid in full.

83. The District incurred substantial damages as a result of Difference Card and Arch's bad faith, in an amount to be determined at trial, but no less than $428,238.62, as well as attorney's fees, costs, and punitive damages.

WHEREFORE, the District respectfully requests that the Court enter judgment in its favor and against the Defendants as follows:

A. For money damages in an amount to be determined at trial, as provided herein;

B. For declaratory relief and supplementary relief, as provided herein;

C. An award of interest on all amounts owed;

D. Actual attorney's fees, costs, and disbursements;

E. Any other relief that the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated this 29th day of April, 2021.        STRANG, PATTESON, RENNING, LEWIS & LACY, S.C., Attorneys for Plaintiff, School District of Janesville

s/Jenna E. Rousseau
Kirk D. Strang
State Bar No. 1010841
Jenna E. Rousseau
State Bar No: 1065236

Madison Office
660 W. Washington St., Suite 303
Madison, WI 53703
Ph. (844) 626-0906
Fax (608) 333-0836
kstrang@strangpatteson.com

Green Bay Office
205 Doty Street, Suite 201
Green Bay, WI 54301

13

Ph. (844) 833-0828
Fax (608) 333-0828
jrousseau@strangpatteson.com