IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SCHOOL DISTRICT OF JANESVILLE,

                Plaintiff,

                                        Case No. 21-cv-291

v.

EB EMPLOYEE SOLUTIONS, LLC D/B/A THE
DIFFERENCE CARD,
ARCH INSURANCE COMPANY,

                Defendants.

---

### ANSWER TO COMPLAINT, DEFENSES, AND CROSS-CLAIM

---

**NOW COMES** the above-named Defendant, Arch Insurance Company ("Arch"), by its attorneys, Ruder Ware, L.L.S.C. and Stradley Ronon Stevens & Young, LLP, and as and for its Answer to the Complaint with Defenses and Cross-Claim, alleges as follows:

### ANSWER

### PARTIES

1.     The Plaintiff, School District of Janesville ("District"), is classified as a unified school district under Wisconsin law. The District's office is located at 527 S. Franklin Street, Janesville, WI 53548.

    **ANSWER:**   Answering paragraph 1, admits.

2.     The Defendant, EB Employee Solutions, LLC d/b/a The Difference Card ("Difference Card"), is a Delaware limited liability company. Upon information and belief, its

principal office is located at 113 Seaboard Lane, Suite 170B, Franklin, TN 37067. Its registered agent for service of process is CT Corporation System, located at 301 S. Bedford St., Suite 1, Madison, WI 53703. Upon information and belief, Difference Card is a single member LLC. Its sole member is EBS, Inc., a Delaware corporation with a principal address of 113 Seaboard Lane, Suite 170B, Franklin, TN 37067.

**ANSWER:**   Answering paragraph 2, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

3.      The Defendant, Arch Insurance Company ("Arch"), is a Missouri corporation. Upon information and belief, its principal office is located at 2345 Grand Boulevard, Suite 900, Kansas City, MO 64108. Its registered agent for service of process is Corporation Service Company, located at 8040 Excelsior Drive, Madison, WI 53717.

**ANSWER:**   Answering paragraph 3, admits, except as to the allegation regarding the location of Arch's principal office, which is denied.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332. This Court has personal jurisdiction over Defendants pursuant to Wis. Stat. § 801.05(1)(d), (5), and (10), and its exercise of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment.

**ANSWER:**   Answering paragraph 4, admits, except Arch denies that this Court has personal jurisdiction over Arch pursuant to Wis. Stat. § 801.05(1)(d), (5), and (10).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

**ANSWER:**   Answering paragraph 5, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

## FACTUAL ALLEGATIONS

6.      On or about July 1, 2018, the District entered into an Account Services Agreement with Difference Card as part of a Health Reimbursement Account (HRA) strategy (Exhibit A).

**ANSWER:**    Answering paragraph 6, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

7.      Difference Card administered the HRA. In addition, Difference Card offered the District a guaranteed maximum claim exposure, which Difference Card secured by purchasing an insurance policy from Arch. Difference Card represented to the District that it "provides flexibility to customize employee benefits and limit claim exposure through a proprietary insurance policy underwritten by Arch."

**ANSWER:**    Answering paragraph 7, Arch admits only that Plaintiff purchased an insurance policy from Arch.  As to the remaining allegations, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

8.      The HRA was designed to pay covered medical expenses of up to $4,750.00 for each single employee after the employee paid a $250.00 deductible and up to $9,500.00 for each employee with family coverage after the employee paid a $500.00 deductible.

**ANSWER:**    Answering paragraph 8, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

9.      The District funded the HRA, but with reinsurance, the District's maximum claim exposure was $94.71 per month per employee.

**ANSWER:**     Answering paragraph 9, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

10.     The District implemented the HRA strategy in order to maintain then-current health insurance benefits for its employees (with no increase in cost to its employees) and also to have a guaranteed maximum claim exposure.

**ANSWER:**     Answering paragraph 10, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

11.     Difference Card represented that its product provided the District with coverage for claims incurred during the plan year and submitted for reimbursement within three (3) months of the end of the plan year. It stated: "[a]ll claims must be submitted within 3 months of the end of the plan year." (Emphasis in original) (Exhibit B).

**ANSWER:**     Answering paragraph 11, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

12.     Difference card also represented that "Arch is a 10 million dollar reinsurance company…We purchase insurance from Arch.  They insure us.  You'll get an actual policy in the District's name laying this all out.  We take care of all of that. We handle all of that."

**ANSWER:**     Answering paragraph 12, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

13.     Difference Card represented that the District would pay a maximum of $141.68 per month per employee. This included a fixed fee of $46.97 per month per employee for Difference Card's administrative fee and the cost of reinsurance. After that, up to $94.71 per month per employee (the attachment point) went towards paying covered claims (Exhibit C). Specifically, Difference Card represented that "[o]ur fee covers the reinsurance policy plus all of our administrative costs, and an attachment point."

**ANSWER:**     Answering paragraph 13, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

14.     Difference Card also represented that it was providing a guaranteed savings of $1.5 million to the District and that the District would have extra funds available in its account as a result of the HRA strategy.

**ANSWER:**     Answering paragraph 14, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

15.     On or about March 27, 2018, Difference Card sent correspondence to the District stating: "We look forward to a long-term relationship with the School District of Janesville. In order to finalize the implementation process for 'The Difference Card' for a July 1, 2018 effective date, we will require a binder check in the amount of $52,966.96." Difference Card charged the District $7,500.00 for an "Initial Set up fee" and $45,466.96 for the "1st Month's Premium (968 employees x $46.97)."

**ANSWER:**   Answering paragraph 15, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

16.     Difference Card purchased a "Wisconsin Blanket Accident Policy" from Arch, as modified by a "Reimbursement Benefit Endorsement" (Policy No. 11REB0984700) (Exhibit D) (hereinafter, "Stop Loss Policy"). Difference Card and Arch listed the Policyholder as the "School District of Janesville." The Stop Loss Policy contained an effective date of July 1, 2018, and listed a policy term of "12 months." Difference Card and Arch listed the "Program Administrator" under the Stop Loss Policy as "EB Employee Solutions LLC Program."

**ANSWER:**   Answering paragraph 16, Arch admits only that it issued to the District a Wisconsin Blanket Accident Policy, with policy number 11REB0984700, an effective date of 7/1/2018, a 12 month term and EB Employee Solutions LLC Program identified as the Program Administrator (the "Arch Policy").  Arch affirmatively alleges that the Arch Policy is not a "stop loss" policy and is a document that speaks for itself.  Arch denies any allegations in Plaintiff's paragraph 16 that are not consistent with the foregoing and the contents of the Arch Policy.

17.     The District also entered into 3-year contracts with Dean Health Plan and Mercyhealth under which Dean Health Plan and Mercyhealth agreed to cover medical expenses incurred by plan participants after an employee with single coverage reached $5,000.00 and an employee with family coverage reached $10,000.00.

**ANSWER:**   Answering paragraph 17, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

18.     Each month, Difference Card sent the District an invoice for $46.97 for each employee participating in the Dean Health Plan and Mercyhealth Plan, except for those employees who chose a point-of-service option.

**ANSWER:**     Answering paragraph 18, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

19.     In addition, on a weekly basis, Difference Card sent the District a check register showing the dates and amounts of checks to be issued from the HRA to pay providers for covered claims. The District then transferred funds to the HRA equal to the amounts listed.

**ANSWER:**     Answering paragraph 19, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

20.     Upon information and belief, Dean Health Plan and Mercyhealth sent weekly reports directly to Difference Card for all claims incurred by plan participants for medical expenses during the plan year.

**ANSWER:**     Answering paragraph 20, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

21.     On or about June 12, 2019, the District entered into an Amendment of the Account Services Agreement with Difference Card. (Exhibit E). As part of the Amendment, the District paid Difference Card an additional fee of $45,326.05 for "Run-Out Services" for the period of July 1, 2019 to September 30, 2019.

**ANSWER:**   Answering paragraph 21, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

22.     In mid-August of 2019, the District contacted Difference Card and Arch to determine when they would be reimbursing the District for the medical expenses that the District funded through the HRA in excess of the District's maximum claim exposure. Difference Card initially stated that it submitted the "claim" to Arch on July 1, 2019, such that the District would be reimbursed by the end of August. Later, Difference Card stated that it submitted the "claim" to Arch on July 29, 2019.

**ANSWER:**   Answering paragraph 22, Arch denies that the District contacted Arch to determine when Arch or Difference Card would be reimbursing the District for the medical expenses that the District funded through the HRA in excess of the District's maximum claim exposure.  Arch lacks sufficient knowledge and information to form a belief as to the truth of the remainder of the allegations contained in paragraph 22 and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

23.     The Stop Loss Policy provided that "[b]enefits for loss covered by this Policy, other than benefits that require periodic payment, will be paid not more than sixty (60) days after the Company receives proper written proof of such loss."

**ANSWER:**   Answering paragraph 23, admits that Plaintiff correctly quoted a portion of the Arch Policy and denies any allegations that are not consistent with the contents of the Arch Policy.

24.     After the sixty (60) day deadline referenced in Paragraph 23, above, had passed, and on or about October 18, 2019, Arch issued a check to the District for $949,748.58, representing only a partial reimbursement for medical expenses paid by the District.

**ANSWER:**     Answering paragraph 24, admits only that on or about October 18, 2019, Arch issued a check to the District for $949,748.58 and denies that any deadline had passed.  As to any remaining allegations contained in paragraph 24, Arch lacks sufficient knowledge and information to form a belief as to the truth of such remaining allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

25.     Difference Card and Arch miscalculated this amount based upon their erroneous interpretation of the "Reimbursement Benefit" under the Stop Loss Policy.

**ANSWER:**     Answering paragraph 25, denies.

26.     The District subsequently demanded that Difference Card and Arch perform the correct calculation and reimburse the District for all amounts owed under the Stop Loss Policy.

**ANSWER:**     Answering paragraph 26, Arch denies the District demanded that Arch perform the correct calculation and reimburse the District for all amounts owed under the Arch Policy.  As to Difference Card, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations contained in paragraph 26 relating to Difference Card and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

27.     On or about October 31, 2019, Arch issued another check to the District in the amount of $1,305,900.00, representing another late and partial reimbursement for medical expenses paid by the District in excess of its maximum claim exposure.

**ANSWER**:    Answering paragraph 27, admits only that on October 31, 2019, Arch issued a check to the District for $1,305,900.00 and denies the remainder of the allegations contained in paragraph 27.

28.    Difference Card and Arch still failed to reimburse the District for claims incurred by plan participants during the plan year that were submitted to Difference Card and Arch within three (3) months of the end of the plan year.

**ANSWER:**    Answering paragraph 28, as to Arch, denies.  As to Difference Card,  Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations contained in paragraph 28 relating to Difference Card and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

29.    Difference Card and Arch denied any obligation to pay for claims incurred during the plan year that were submitted within three (3) months of the end of the plan year.

**ANSWER:**    Answering paragraph 29, as to Arch, denies.  As to Difference Card, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations contained in paragraph 29 relating to Difference Card and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

30.    The District sent a demand letter on March 11, 2020, by and through its legal counsel, to Difference Card and Arch demanding reimbursement of all amounts owed to the District in excess of its maximum claim exposure.

**ANSWER:**    Answering paragraph 30, as to Arch, admits that the District sent a demand letter on March 11, 2020 to Arch, which letter is a writing that speaks for itself.  Arch denies the remainder of the allegations contained in paragraph 30 as to Arch, to the extent that such allegations are not consistent with the contents of the letter.  As to Difference Card, Arch lacks

sufficient knowledge and information to form a belief as to the truth of the allegations contained in paragraph 30 relating to Difference Card and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

31. Both Difference Card and Arch have failed to reimburse the District in full for claims incurred during the plan year that were submitted for reimbursement within three (3) months of the end of the plan year. Difference Card has also failed to reimburse the District for "Run-Out Services" that were never provided.

**ANSWER:** Answering paragraph 31, as to Arch, denies. As to Difference Card, Arch lacks sufficient knowledge and information to form a belief as to the truth of the remainder of the allegations contained in paragraph 31 and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

32. The actions of Difference Card and Arch are contrary to Wisconsin law. Under Wisconsin law, "[a]ny self-insurance plan under [Wis. Stat. § 120.13(2)(b)] that covers less than 1,000 public school district employees shall include excess or stop-loss reinsurance obtained through an insurer authorized to do business in this state, *for the purpose of covering all eligible claims incurred during the term of the policy or contract.*" (Emphasis added).

**ANSWER:** Answering paragraph 32, admits that Plaintiff quotes a portion of the statute but denies that the portion of the statute quoted as to Arch is applicable, and denies that Arch acted contrary to Wisconsin law. As to Difference Card, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations contained in paragraph 32 relating to Difference Card and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

33. Although coverage may be provided on a paid basis, "[u]pon termination for any reason of an excess or stop-loss insurance policy that provides coverage on a paid basis, the policy

shall apply all claims incurred but not paid prior to the termination of the policy to the aggregate deductible of the benefit period in which the service or item was provided or furnished to an employee or dependent under the self-insured employee health care benefit plan." Wis. Admin. Code INS § 8.11(5)(b).

**ANSWER:**     Answering paragraph 33, admits that Plaintiff quotes a portion of the statute but denies that the portion of the statute quoted as to Arch is applicable.

34.     The District has suffered damages in an amount to be determined at trial, including, but not limited to, all unreimbursed amounts for covered claims paid by the District, consequential and incidental damages, interest, attorney's fees, and punitive damages.

**ANSWER:**     Answering paragraph 34, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

**FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT (DIFFERENCE CARD)**

35.     The District hereby incorporates all preceding paragraphs as if fully set forth herein.

**ANSWER:**     Answering paragraph 35, Arch re-alleges and incorporates by reference, as if fully set forth herein, all responses and affirmative allegations set forth in the answers to paragraphs 1 through 34 as set forth above.

36.     Difference Card materially breached its contracts with the District in numerous respects, including, but not limited to, failing to provide the program and coverage that it sold to the District, failing to properly perform its duties as the Program Administrator under the Stop Loss Policy, failing to timely reimburse the District for claims incurred and paid by the District, failing to provide the "Run-Out Services" that the District paid for and the parties agreed to, and acting contrary to Wisconsin law.

**ANSWER:**    Answering paragraph 36, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

37.    Difference Card also breached the duty of good faith and fair dealing in numerous respects, including, but not limited to, failing to provide the program and coverage that it sold to the District, failing to properly perform its duties as the Program Administrator under the Stop Loss Policy, failing to timely reimburse the District for claims incurred and paid by the District, erroneously calculating the amounts owed to the District under the Stop Loss Policy, failing to provide "Run-Out Services," and acting contrary to Wisconsin law.

**ANSWER:**    Answering paragraph 37, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

38.    The District has suffered damages in an amount to be determined at trial, including, but not limited to, all unreimbursed amounts for covered claims paid by the District, consequential and incidental damages, interest, and attorney's fees.

**ANSWER:**    Answering paragraph 38, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

**SECOND CLAIM FOR RELIEF – BREACH OF CONTRACT (AGAINST ARCH)**

39.    The District hereby incorporates all preceding paragraphs as if fully set forth herein.

**ANSWER:**    Answering paragraph 39, Arch re-alleges and incorporates by reference, as if fully set forth herein, all responses and affirmative allegations set forth in the answer to paragraphs 1 through 38 as set forth above.

40.     Arch materially breached the Stop Loss Policy in numerous respects, including, but not limited to, failing to reimburse the District within the timeframe provided under the Stop Loss Policy, miscalculating amounts owed to the District under the Stop Loss Policy, denying coverage and reimbursement for claims incurred during the plan year that were submitted within three (3) months of the end of the plan year, failing to properly investigate the claims, and acting contrary to Wisconsin law.

**ANSWER:**     Answering paragraph 40, denies.

41.     Arch also breached the duty of good faith and fair dealing in numerous respects, including, but not limited to, failing to reimburse the District within the timeframe provided under the Stop Loss Policy, miscalculating amounts owed to the District under the Stop Loss Policy, denying coverage and reimbursement for claims incurred during the plan year that were submitted within three (3) months of the end of the plan year, failing to properly investigate the claims, and acting contrary to Wisconsin law.

**ANSWER:**     Answering paragraph 41, denies.

42.     The District has suffered damages in an amount to be determined at trial, including, but not limited to, all unreimbursed amounts for covered claims paid by the District, consequential and incidental damages, interest, and attorney's fees.

**ANSWER:**     Answering paragraph 42, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

## THIRD CLAIM FOR RELIEF – FRAUDULENT MISREPRESENTATION UNDER WIS. STAT. § 100.18 (AGAINST DIFFERENCE CARD)

43.     The District hereby incorporates all preceding paragraphs as if fully set forth herein.

**ANSWER:**    Answering paragraph 43, Arch re-alleges and incorporates by reference, as if fully set forth herein, all responses and affirmative allegations set forth in the answer to paragraphs 1 through 42 as set forth above.

44.    Difference Card made a representation to the District, a member of the public, that its product included coverage for claims incurred during the plan year and submitted for reimbursement within three (3) months of the end of the plan year.

**ANSWER:**    Answering paragraph 44, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

45.    Difference Card also made representations to the District, a member of the public, that Difference Card was providing a guaranteed maximum cost exposure to the District.

**ANSWER:**    Answering paragraph 45, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

46.    Difference Card's representations were untrue, deceptive, and misleading.

**ANSWER:**    Answering paragraph 46, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

47.    Difference Card made the representations with the intent to induce the District to purchase services and/or products from Difference Card.

**ANSWER:**    Answering paragraph 47, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

48.     Difference Card's representations materially induced a significant pecuniary loss to the District in an amount to be determined at trial, but no less than $428,238.62, plus interest, and attorney's fees.

**ANSWER:**     Answering paragraph 48, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

## FOURTH CLAIM FOR RELIEF – INTENTIONAL MISREPRESENTATION (AGAINST DIFFERENCE CARD)

49.     The District hereby incorporates all preceding paragraphs as if fully set forth herein.

**ANSWER:**     Answering paragraph 49, Arch re-alleges and incorporates by reference, as if fully set forth herein, all responses and affirmative allegations set forth in the answer to paragraphs 1 through 48 as set forth above.

50.     Difference Card made a representation to the District, a member of the public, that its product included coverage for claims incurred during the plan year and submitted for reimbursement within three (3) months of the end of the plan year.

**ANSWER:**     Answering paragraph 50, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

51.     Difference Card also made representations to the District that Difference Card was guarantying a maximum cost exposure to the District.

**ANSWER:**     Answering paragraph 51, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

52.     Difference Card also made representations to the District that it would provide "Run-Out Services" to the District for an additional fee of $45,326.05.

**ANSWER:**     Answering paragraph 52, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

53.     Difference Card's representations were untrue.

**ANSWER:**     Answering paragraph 53, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

54.     Difference Card made the representations knowing that they were untrue, or recklessly not caring with they were true or false.

**ANSWER:**     Answering paragraph 54, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

55.     Difference Card made the representations with the intent to deceive the District and to induce the District to purchase insurance coverage and other products and services to its pecuniary damage.

**ANSWER:**     Answering paragraph 55, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

56.     The District believed the representations were true and justifiably relied on them.

**ANSWER:**     Answering paragraph 56, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

57.     The District incurred substantial damages as a result of Difference Card's misrepresentations, in an amount to be determined at trial, but no less than $428,238.62, plus interest, and attorney's fees.

**ANSWER:**     Answering paragraph 57, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

## FIFTH CLAIM FOR RELIEF – NEGLIGENT MISREPRESENTATION (AGAINST DIFFERENCE CARD)

58.     The District hereby incorporates all preceding paragraphs as if fully set forth herein.

**ANSWER:**     Answering paragraph 58, Arch re-alleges and incorporates by reference, as if fully set forth herein, all responses and affirmative allegations set forth in the answers to paragraphs 1 through 57 as set forth above.

59.     Difference Card made a representation to the District, a member of the public, that its product included coverage for claims incurred during the plan year and submitted for reimbursement within three (3) months of the end of the plan year.

**ANSWER:**     Answering paragraph 59, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

60.     Difference Card also made representations to the District that Difference Card was guarantying a maximum cost exposure to the District.

**ANSWER**:     Answering paragraph 60, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

61.     Difference Card also made representations to the District that it would provide "Run-Out Services" to the District for an additional fee of $45,326.05.

**ANSWER:**     Answering paragraph 61, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

62.     Difference Card's representations were untrue.

**ANSWER:**     Answering paragraph 62, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

63.     Difference Card was negligent in making these representations.

**ANSWER:**     Answering paragraph 63, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

64.     The District believed the representations were true and justifiably relied on them.

**ANSWER:**     Answering paragraph 64, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

65.     Difference Card owed a duty of care to the District.

**ANSWER:**     Answering paragraph 65, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

66.     The District incurred substantial damages as a result of Difference Card's misrepresentations, in an amount to be determined at trial, but no less than $428,238.62, plus interest, and attorney's fees.

**ANSWER:**     Answering paragraph 66, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

## SIXTH CLAIM FOR RELIEF – STRICT RESPONSIBILITY MISREPRESENTATION (AGAINST DIFFERENCE CARD)

67.     The District hereby incorporates all preceding paragraphs as if fully set forth herein.

**ANSWER:**     Answering paragraph 67, Arch re-alleges and incorporates by reference, as if fully set forth herein, all responses and affirmative allegations set forth in the answer to paragraphs 1 through 66 as set forth above.

68.     Difference Card made a representation to the District, a member of the public, that its product included coverage for claims incurred during the plan year and submitted for reimbursement within three (3) months of the end of the plan year.

**ANSWER:**     Answering paragraph 68, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

69.     Difference Card also made representations to the District that Difference Card was guarantying a maximum cost exposure to the District.

**ANSWER:**     Answering paragraph 69, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

70.     Difference Card also made representations to the District that it would provide "Run-Out Services" to the District for an additional fee of $45,326.05.

**ANSWER:**     Answering paragraph 70, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

71.     Difference Card's representations were untrue.

**ANSWER:**     Answering paragraph 71, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

72.     Difference Card was so situated that it necessarily ought to have known the truth or untruth of the statements.

**ANSWER:**     Answering paragraph 72, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

73.     Difference Card had an economic interest in the transaction.

**ANSWER:**     Answering paragraph 73, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

74.     The District believed the representations were true and justifiably relied on them.

**ANSWER:**     Answering paragraph 74, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

75.     The District incurred substantial damages as a result of Difference Card's misrepresentations, in an amount to be determined at trial, but no less than $428,238.62, plus interest, and attorney's fees.

**ANSWER:**     Answering paragraph 75, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

## SEVENTH CLAIM FOR RELIEF – DECLARATORY RELIEF UNDER WIS. STAT. § 806.04 (AGAINST DIFFERENCE CARD AND ARCH)

76.     The District hereby incorporates all preceding paragraphs as if fully set forth herein.

**ANSWER:**     Answering paragraph 76, Arch re-alleges and incorporates by reference, as if fully set forth herein, all responses and affirmative allegations set forth in the answer to paragraphs 1 through 75 as set forth above.

77.     Under Wis. Stat. § 806.04, the District seeks a declaration that it is entitled to coverage and reimbursement for the claims incurred during the plan year that were submitted within three (3) months of the end of the plan year.

**ANSWER:**     Answering paragraph 77, Arch alleges this is not a statement of fact that requires a response.  To the extent a further response is necessary, Arch denies Plaintiff is entitled to the declaration it is requesting.

78.     A declaratory judgment is appropriate as there is a controversy in which a claim is asserted against parties with an interest in contesting it; the controversy is between adverse parties; the District has a legally protectable interest; and the issue in controversy is ripe for determination.

**ANSWER:**     Answering paragraph 78, denies.

79.     The District is further entitled to supplemental relief under Wis. Stat. § 806.04(8), including, but not limited to, the District's attorney's fees and costs incurred in establishing coverage.

**ANSWER:**     Answering paragraph 79, denies.

## EIGHTH CLAIM FOR RELIEF – BAD FAITH
## (AGAINST DIFFERENCE CARD AND ARCH)

80.     The District hereby incorporates all preceding paragraphs as if fully set forth herein.

**ANSWER:**     Answering paragraph 80, Arch re-alleges and incorporates by reference, as if fully set forth herein, all responses and affirmative allegations set forth in the answer to paragraphs 1 through 79 as set forth above.

81.     Difference Card and Arch engaged in bad faith conduct towards the District including, but not limited to, failing to reimburse the District within the timeframe provided under the Stop Loss Policy, miscalculating amounts owed to the District under the Stop Loss Policy, denying coverage and reimbursement for claims incurred during the plan year that were submitted within three (3) months of the end of the plan year, failing to properly investigate the claims, and acting contrary to Wisconsin law.

**ANSWER:**     Answering paragraph 81, as to Arch, denies.  As to Difference Card,  Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations contained in paragraph 81 relating to Difference Card and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

82.     There was no reasonable basis for Difference Card and Arch's actions and they knew or recklessly failed to ascertain that the claims should have been timely paid in full.

**ANSWER:**    Answering paragraph 82, as to Arch, denies.  As to Difference Card,  Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations contained in paragraph 82 relating to Difference Card and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

83.    The District incurred substantial damages as a result of Difference Card and Arch's bad faith, in an amount to be determined at trial, but no less than $428,238.62, as well as attorney's fees, costs, and punitive damages.

**ANSWER:**    Answering paragraph 83, as to Arch, denies.  As to Difference Card, Arch lacks sufficient knowledge and information to form a belief as to the truth of the allegations contained in paragraph 83 relating to Difference Card and, therefore, denies the same and puts the Plaintiff to its strict proof therein.

## DEFENSES

Arch alleges the following defenses, avoidances, and affirmative defenses, without assuming the burden of proof where such a burden is otherwise on Plaintiff pursuant to applicable substantive or procedural law.

1.    As and for a separate defense, Arch alleges that the Complaint, and/or one or more of the causes of action alleged therein, fail(s) to state a claim upon which relief can be granted.

2.    As and for a separate defense, Arch alleges that Plaintiff failed to mitigate its damages.

3.    As and for a separate defense, the Arch Policy, as set forth in Sections including but not limited to Section VI, terminated at 11:59 PM on June 30, 2019, and Plaintiff's claims are barred or limited to the extent that Plaintiff's claims include or constitute losses occurring and/or payments made after the Arch Policy terminated.

4.      As and for a separate defense, the Arch Policy, as set forth in Sections including but not limited to Sections I (CLASSES OF ELIGIBLE PERSONS), III (COVERED PERSON) and IV (ELIGIBILITY OF INSURANCE), applies to Covered Persons and Plaintiff's claims may be barred or limited to the extent that its claims include coverage sought for persons who are not Covered Persons.

5.      As and for a separate defense, the Arch Policy, as set forth in Section VIII, Changes in Premium Rate and Premium Audit, includes a reservation of Arch's right to change rates under enumerated circumstances including but not limited to when "6) the number of Covered Persons or persons eligible for coverage or Estimated Volume of Insurance increases of decreases by more than 20% since the later of the Policy Effective Date or the date of the last renewal of this Policy" and to "determine the accuracy of premiums paid[,]" and Plaintiff's claims may be barred or limited by the doctrines of setoff or recoupment to the extent Arch is or was entitled to a rate increase and/or premium increase that remains unpaid by Plaintiff.

6.      As and for a separate defense, there is no coverage under the Arch Policy to the extent that Plaintiff has violated its conditions precedent to coverage, including but not limited to the conditions for NOTICE OF CLAIM and/or PROOF OF LOSS, as set forth in Section IX of the Arch Policy.

7.      As and for a separate defense, the Arch Policy, at Section IX, RECOVERY OF OVERPAYMENT, permits Arch to recover any overpayment of benefits and Plaintiff's claims may be barred or limited by the doctrines of setoff or recoupment to the extent that Arch is, was or will be entitled to any return of overpaid benefits.

8.      As and for a separate defense, the Arch Policy, at Section IX, TIME OF PAYMENT OF CLAIMS, conditions Arch's timing for the payment of benefits upon its receipt of "proper

written proof of such loss" and Plaintiff's claim may be barred or limited to the extent that Plaintiff failed to provide, and/or failed to timely provide, Arch with proper written proof of loss.

9.      As and for a separate defense, the Arch Policy, at Section IX, SUBROGATION, provides that Arch, to the extent it pays for a loss, takes over the rights and remedies the Insured Person had relating to the loss and the Insured Person must help Arch preserve its rights against those responsible for the loss.  Plaintiff's claims may be barred, limited and/or offset to the extent any Insured Person failed to preserve Arch's right of subrogation.

10.      As and for a separate defense, the Arch Policy, at Section X, LEGAL ACTION, provides that "No legal action may be brought to recover on this Policy before 60 days following the date written Proof of Loss was given to [Arch]" and Plaintiff's claims may be barred or limited to the extent Plaintiff failed to comply with this policy condition.

11.      As and for a separate defense, the Arch Policy, at Section X, MISREPRESENTATION AND FRAUD, provides that "this entire Policy will be void, whether before or after a loss, if the Company determines that the Policyholder; Covered Person; or its agent has concealed or misrepresented any material fact or circumstance concerning this Policy, including any claim or any case of fraud by the Policyholder; Covered Person; Third Party Administrator; or other agent relating to this policy."  Plaintiff's claims may be barred or limited to the extent that Arch is entitled to void the Arch Policy based on any of these provisions.

12.      As and for a separate defense, the Arch Policy, at Section X, MISSTATED DATA, provides that "the Company has relied upon the underwriting information provided by the Policyholder; its Third Party Administrator; or other agent in the issuance of this Policy. Should subsequent information become known which, if known prior to issuance of this Policy, would have affected the rates; deductibles; terms; or conditions for coverage, the Company will have the

right to revise the rates; deductibles; terms; or conditions as of the Effective Date of issuance, by providing written notice to the Policyholder."  Plaintiff's claims may be barred, limited or setoff to the extent that Arch is or will be entitled to revise the Arch Policy based on any of these provision.

13.     As and for a separate defense, the Arch Policy, at the REIMBURSEMENT BENEFIT ENDORSEMENT,  provides a Benefit Maximum of $15,000 per Covered Person and $30,000 per Covered Family, and Plaintiff's claims may be barred or limited to the extent they include claims in excess of the Benefit Maximums or either of them.

14.     As and for a separate defense, the Arch Policy, at the REIMBURSEMENT BENEFIT ENDORSEMENT, provides that the Arch Policy applies to Eligible Expenses, defined as "co-payments, deductibles and coinsurance actually incurred by or on behalf of a Covered Person for an eligible treatment, service and supplies reimbursed through our Program Administrator.  An Eligible Expense is deemed to be incurred on the date such treatment, service or supply, that gave rise to the expense or the charge, was rendered or obtained.  Eligible Expenses must be incurred during a policy period and paid during the Policy."  Plaintiff's claims may be barred, limited or setoff to the extent that its claims include, or included, expenses, costs or other damages that are not Eligible Expenses as defined by the Arch Policy and, thus, are not covered under the Arch Policy.

15.     As and for a separate defense, the Arch Policy, at the REIMBURSEMENT BENEFIT ENDORSEMENT, provides that the "AGGREGATED DEDUCTIBLE is determined at the end of the Policy Term and is an amount equal to the product of the Deductible Factor times the number of Covered Persons for each applicable month during the Policy Term, or the Minimum Deductible, whichever is greater based on actual enrollment.  The amount is that portion of the

eligible expenses not covered by this Policy and is retained by the Policyholder.  The Aggregate Deductible applies to Eligible Expenses only."  Plaintiff's claims may be barred, limited or setoff to the extent that its claims include or included amounts that comprise and/or are within the Aggregate Deductible.

16.     As and for a separate defense, there is no coverage under the Arch Policy to the extent that the alleged liability or damages are otherwise excluded or failed to satisfy the Arch Policy's insuring agreement or other terms and conditions.

17.     As and for a separate defense, to the extent Plaintiff is covered under any other insurance policy, coverage under the Arch Policy may be barred, reduced or limited, in whole or in part.

18.     As and for a separate defense, Plaintiff's claims may be barred, in whole or in part, by any applicable statute of limitations, and/or the doctrines of laches, waiver, release, accord and satisfaction, setoff, recoupment, unclean hands and/or estoppel.

19.     As and for a separate defense, the claims asserted in the Complaint are barred, in whole or in part, because Arch did not breach any duty owed to the Plaintiff.

20.     As and for a separate defense, the American Rule bars Plaintiff's common law claims for attorney's fees and the Complaint otherwise fails to state a cause of action sufficient to support any claim for attorney's fees.

21.     As and for a separate defense, there is no coverage for Plaintiff's claims under the Arch Policy to the extent an insured has intentionally concealed, misrepresented or failed to disclose any material fact or circumstance, engaged in fraudulent conduct, or made false statements relating to the Arch Policy.

22.     As and for a separate defense, at all times relevant hereto, Arch acted reasonably and in good faith toward its insureds and did not engage in any bad faith conduct in the handling of the Plaintiff's claims for coverage.

23.     As and for a separate defense, at all times relevant hereto, Arch undertook an honest and intelligent evaluation of all of the facts and circumstances learned upon a diligent and good faith investigation into the Plaintiff's claims.

24.     As and for a separate defense, Arch did not act with an absence of a reasonable basis for denying policy benefits and, even if Arch lacked a reasonable basis, assuming *arguendo*, Arch did not act with knowledge or a reckless disregard of the lack of a reasonable basis.

25.     As and for a separate defense, Arch raised only legitimate policy terms and conditions to Plaintiff's fairly debatable claims and acted in the absence of any intention to avoid paying a claim, or any portion(s) thereof, without a reasonable basis.

26.     As and for a separate defense, Plaintiff's bad faith claim against Arch may be barred or limited to the extent that Plaintiff and/or their representative exhibited bad faith in their dealings with Arch.

27.     As and for a separate defense, at no relevant time did Arch act maliciously, reprehensibly or outrageously, or with willful or reckless disregard of the Plaintiff's rights, or exhibit other, similar wrongful conduct.  Accordingly, no award of punitive damages would be proper.

28.     As and for a separate defense, Plaintiff's claim for punitive damages against Arch may be otherwise barred or limited by Wis. Stat. §895.043.

29.     As and for a separate defense, any award of punitive damages against Arch in this case would violate constitutional safeguards, including but not limited to, the right to due process

and equal protection under the law, afforded by the Constitution of the United States of America and the Wisconsin Constitution.

30.     As and for a separate defense, the claims asserted in the Complaint may be precluded or limited, in whole or in part, to the extent that the Plaintiff failed to exhaust other available remedies.

31.     As and for a separate defense, Arch is entitled to a setoff against any damages awarded in this case, for any and all payments made by any collateral source.

32.     As and for a separate defense, all claims asserted in the Complaint are barred because no act of Arch caused any injury to the Plaintiff.

33.     As and for a separate defense, Arch is not responsible for any damages caused, in whole or in part, by the independent, intervening, or superseding acts of third parties.

34.     As and for a separate defense, Arch is not responsible for, and is not the legal or proximate cause of any damages resulting from, any acts, representations, or omissions by third parties that were not authorized and/or were not performed with the actual, implied, or apparent authority of Arch.

35.     As and for a separate defense, to the extent that third parties other than Arch are at fault with respect to the matters complained of in the Complaint, and/or any alleged harm or damages suffered, any recovery by Plaintiff should be reduced by the proportion of such harm or damages, if any, caused by such other third parties.

36.     As and for a separate defense, Arch reserves the right to assert such other and additional defenses as may become known or available during the course of discovery in this action.

## CROSS-CLAIM OF ARCH INSURANCE COMPANY AGAINST DEFENDANT EB EMPLOYEE SOLUTIONS, LLC D/B/A THE DIFFERENCE CARD

**NOW COMES** the above-named Defendant, Arch Insurance Company, by its attorneys, Ruder Ware, L.L.S.C. and Stradley Ronon Stevens & Young, LLP, and as and for a Cross-Claim against Defendant EB Employee Solutions, LLC d/b/a The Difference Card ("Difference Card"), alleges as follows:

1. Arch incorporates by reference all of the above paragraphs, as though the same were set forth at length herein.

2. Arch and Difference Card entered into a Producer Agreement dated November 16, 2017 (the "Producer Agreement"). A copy of the Producer Agreement is attached hereto as Exhibit 1.

3. The Producer Agreement provided Difference Card would underwrite for Arch, specific policies within Difference Card's program.

4. Specifically, Arch authorized Difference Card to "[s]olicit, determine underwriting acceptability of risks, rate, quote, negotiate, bind products (hereinafter the "Policies") in accordance with the underwriting guidelines as described in Exhibit B, Underwriting Guidelines […]." (Ex. 1, Producer Agreement at 1, section II.1.a.)

5. In turn, Difference Card agreed to "[a]dhere to the Underwriting Guidelines, outlined in in [sic] Exhibit B […]." (*Id.* at 3, section II.3.c.)

6. The Producer Agreement's Underwriting Guidelines authorized Difference Card to issue Policies, up to a "[m]aximum group size without referral of 1,000 lives." (Ex. 1 at 12, emphasis in the original.)

7.      Difference Card was not permitted to issue Policies for a group in excess of 1,000 lives without Arch's express permission.

8.      In issuing the Arch Policy to Plaintiff, Difference Card erred in grossly exceeding this maximum limitation, as the group size for the Plaintiff was more than double the "1,000 lives." *Id.*

9.      Difference Card was not authorized or permitted to issue the Arch Policy to Plaintiff, and Difference Card's issuance of the Arch Policy was in material breach of the Producer Agreement.

10.     In addition, the Producer Agreement required Difference Card to transmit to Arch periodic bordereaux reports concerning the Policies that Difference Card generated under the Producer Agreement.  (Ex. 1 at 3 and 14 (section IV.1 and Ex. C thereto).)

11.     For each insured group, the Producer Agreement required Difference Card's transmitted bordereaux report to disclose the "Number of Participants" within a given group's policy.  Difference Card again erred and in doing so materially breached the Producer Agreement by repeatedly disclosing as Participants the number of covered employees for the Plaintiff within its bordereaux reports, rather than the number of lives.  The latter would have accurately indicated the "Number of Participants" under the Arch Policy.  The former did not and was thereby inaccurate and misleading to Arch.

12.     The Producer Agreement at Section X.2, INDEMNIFICATION, requires Difference Card to indemnify and defend Arch for and against, and hold Arch harmless from, all losses to the extent arising from any Difference Card breach of the Producer Agreement, noncompliance with applicable laws and regulations, or otherwise arising from the Producer Agreement.  (Ex. 1 at 5-6.)

13.     Arch has satisfied all conditions precedent to its entitlement to indemnification from Difference Card under the Producer Agreement.

14.     As a direct result of Difference Card's material breaches of the Producer Agreement and its negligent errors and omissions, Difference Card has bound Arch as insurer to the Plaintiff on the Arch Policy, and Arch has sustained damages.

15.     Difference Card is liable to Arch for breach of contract and professional negligence, in ignoring, misinterpreting and breaching the Underwriting Guidelines, issuing the Arch Policy to the Plaintiff without authority or permission from Arch, and reporting materially incorrect information to Arch during the term of the Arch Policy and within the context of Difference Card providing professional services to Arch, upon which Arch reasonably relied, to its detriment.

16.     Additionally, if Arch is found liable to Plaintiff in this action on the basis of and/or arising from the Arch Policy, such liability being expressly denied, Arch avers that Difference Card is liable over to Arch on Plaintiff's causes of action, alternatively or in combination, on the basis of breach of contract, subrogation, contractual indemnification, common law indemnification, common law contribution and/or professional negligence.

17.     If Arch is found liable to Plaintiff in this action on the basis of any agency/principal theory of liability, including but not limited to imputed conduct and/or vicarious liability, which liability Arch expressly denies, then Difference Card is liable over to Arch to the extent that Arch's liability arises from Difference Card's conduct.

18.     Arch's damages include but are not limited to the policy benefits it has thus far paid to the Plaintiff in the amount of $2,255,648.58, and any amounts that Arch may further be obligated to pay to the Plaintiff, plus Arch's attorney's fees and costs that it has and will incur, arising from Difference Card's material breaches and negligent errors and omissions, including fees incurred for Arch's evaluation of the Plaintiff's claims, asserting its rights against Difference Card and in defending against the claims asserted by the Plaintiff in this lawsuit.

**WHEREFORE**, Defendant Arch Insurance Company demands judgment dismissing the Complaint against it, Judgment in its favor on its Cross-Claim, and recovery of its costs, expenses, and attorneys' fees, and such other and further relief as is just and equitable.

Dated this 25th day of June, 2021

 */s/ Kevin E. Wolf*
Kevin E. Wolf, Esquire
RUDER WARE, L.L.S.C.
500 North First Street, Suite 8000
Wausau, WI  54403
T: (715) 845-4336
F: (715) 845-2718
E: kwolf@ruderware.com
Counsel for Arch Insurance Company


 */s/ Jeffrey D. Grossman*
Jeffrey D. Grossman, Esquire
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
T: (215) 564-8000
F: (215) 564-8120
E: jgrossman@stradley.com
Counsel for Arch Insurance Company